THE WM. B. GRIMES DRY GOODS COMPANY *et al.* v. A. M. McKEE.

1. CHATTEL MORTGAGE, *When Invalid — Invalidity, When Cured.* A chattel mortgage, not filed for record, upon personal property not delivered to the mortgagee, is invalid; but if the mortgagee records the mortgage, and takes possession of the property with the consent of the mortgagor, before any other right or lien attaches, it will cure the invalidity and make the mortgage lien effective, as against all general creditors and those who subsequently acquire a lien or specific interest in the property. (*Cameron v. Marvin*, 26 Kas. 612.)

2. EVIDENCE *Sustains Judgment.* The evidence examined, and *held* to be sufficient to sustain the finding and judgment of the court.

*Error from Norton District Court.*

ACTION by *A. M. McKee* against the *Wm. B. Grimes Dry Goods Company* and Barton Bros. Judgment, from which defendants bring error. The opinion states the facts.

*Edgar C. Ellis,* for plaintiffs in error:

McKee's mortgages are made void by § 9 of the mortgage act. *Cameron v. Marvin,* 26 Kas. 612.

"An antecedent creditor, who knows that his debtor procured goods and merchandise by fraudulent means, cannot by a chattel mortgage secure a lien on such fraudulently-procured goods, adverse to the innocent vendors of such goods." *Wafer v. Harvey County Bank,* 46 Kas. 597.

The case of *Krippendorf v. Hyde,* 28 Fed. Rep. 788, and the case at bar are cut to the same pattern.

*L. H. Thompson,* for defendant in error:

We think, without going into a general discussion of the facts and evidence, that this case rests upon the rule laid down in the case of *Cameron v. Marvin,* 26 Kas. 612, and cases therein referred to.

The opinion of the court was delivered by

JOHNSTON, J.: This was an action of replevin brought by A. M. McKee against the Wm. B. Grimes Dry Goods Company, to determine the right to the possession of a stock of merchandise which was formerly purchased and held by John Thorn. In July, 1888, Thorn purchased the share or interest of a partner and commenced business at Clayton in his own name as a dealer in general merchandise. He purchased goods on credit from the plaintiffs in error and other dealers, and to meet some of his obligations as they fell due he borrowed money from A. M. McKee, a banker of the same place. On December 4, 1888, he executed a mortgage upon his stock of goods to McKee to secure the payment of $321.10, which was filed for record February 2, 1889; and on January 23, 1889, he gave a second chattel mortgage upon the stock of goods to secure the payment of $952.55, which was to become due and payable on April 23, 1889. This mortgage was filed for record on February 2, 1889. On February 5, 1889, McKee, deeming himself unsafe, demanded and obtained posses-

sion of the stock of goods, and, subsequent to the taking possession of the stock of goods by McKee, Thorn executed and delivered to the Wm. B. Grimes Dry Goods Company a chattel mortgage upon the same stock to secure the payment of $633.33. Barton Bros. brought an attachment suit against Thorn on February 19, 1889, and caused a levy to be made upon the stock of goods, subject only to the claim of the Wm. B. Grimes Dry Goods Company. The property was left by the sheriff in the custody of the dry goods company until it was replevied by McKee. Barton Bros. subsequently obtained judgment upon their claim against Thorn, and intervened in this action of replevin, which was tried by the court without a jury, and, on October 7, 1889, the court announced its finding and judgment, to the effect that McKee was entitled to the possession of the goods replevied, except "$182 worth thereof," to which the Wm. B. Grimes Dry Goods Company was entitled, and judgment was accordingly given, with the provision that plaintiff should recover from the dry goods company and Barton Bros. four-fifths of the costs of the action, and that the dry goods company should recover from the plaintiff $182 worth of the goods, or the value thereof, and that it should recover from McKee one-fifth of its costs.

The plaintiffs in error contend that the McKee mortgages were absolutely void, because there was no immediate change of the possession of the property and the mortgages were not at once filed for record. It is also contended that they are void because McKee, with full knowledge of Thorn's insolvency, entered into a fraudulent agreement to aid him in building up a fictitious credit, and thus obtain the merchandise against which he was attempting to enforce his mortgage liens. The case was submitted upon oral and written evidence, and no special findings of fact were requested or returned. The only question submitted, then, is whether the general finding of the court is sustained by the testimony, and a careful reading of the same compels an affirmative answer. The fact that the chattel mortgages were not immediately recorded by McKee, and that the property was not

delivered to him, will not prevent a recovery. They were filed for record and possession of the property was taken under them before the plaintiffs in error obtained their mortgage or any right or interest in the mortgaged property. Possession was taken with the consent of the mortgagor, and, under the numerous rulings, the mortgages then became valid. (*Cameron v. Marvin*, 26 Kas. 612.) Up to that time the mortgaged property was in the dominion of the mortgagor, and he had a continuing right to mortgage his property and prefer one creditor over another, so long as it was done in good faith. The testimony shows, without any doubt, that the debt for which the mortgages were given to McKee was *bona fide*, and was incurred for money borrowed by Thorn to carry on his business and to discharge accruing obligations. Counsel for plaintiffs in error earnestly argue that the circumstances disclosed in the testimony show collusion and bad faith on the part of Thorn and McKee, but we are unable to reach the same conclusion, and think there is sufficient evidence to sustain the finding of the court. A detailed statement of facts to sustain this conclusion is unnecessary and would be unprofitable. While McKee knew the approximate value of the stock of goods carried by Thorn, he testified that he did not know of the extent of the indebtedness, and did not know of his insolvency until about the time that he took possession of the goods. When he saw indications of financial embarrassment, he was vigilant in securing his own claim, but the evidence does not convince us that he acted in bad faith or with a design to defraud other creditors.

The defendant in error claims that he was entitled to all of the goods in controversy, and asks for a modification of the judgment in that respect, awarding him the full amount of the interest he claimed and all his costs. No cross petition in error was filed by him, and hence his complaint cannot be considered.

Judgment affirmed.

All the Justices concurring.